UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                        :

EUGENE BUSH,
                        :

           Petitioner,       :

    – against –          :

LEONARD PORTUONDO,
                        :

           Respondent.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM,
JUDGMENT & ORDER
02-CV-2883 (JBW)
03-MISC-0066 (JBW)

JACK B. WEINSTEIN, Senior District Judge:

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary.

This memorandum briefly addresses petitioner's claims.

I. Facts and Procedural History

This petition was filed on May 5, 2002. Petitioner (sometimes referred to as defendant)

claims:

Ground One: The prosecutor used his peremptory challenges to excuse African-American jurors on the basis of race.

Ground Two: The petitioner's oral and videotape should have been suppressed because the police continued to question him after he invoked his right to be silent.

Ground Three: The trial judge's limitation of defense counsel's cross-examination of a witness violated petitioner's right to present a defense.

The evidence supports the following statement:

On April 1, 1995, shortly after 7:00 p.m., on the corner of Nostrand Monroe Avenues in

Brooklyn, petitioner (hereinafter "defendant") was carrying a gun. He and another man attacked

Wayne Jordan. During the attack, Jordan was shot and killed.

Defendant and co-defendant Michael Flournoy were charged, under Kings County Indictment Number 12658/96, with two counts of Murder in the Second Degree (N.Y. Penal Law §§ 125.25[1], [2]), and one count each of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03) and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02 [4]).

Defendant was convicted, after a jury trial, of Criminal Possession of a Weapon in the Second Degree, and was sentenced as a persistent violent felony offender to a prison term of twenty-five years to life.

Defendant appealed from his judgment of conviction to the Appellate Division. *See* N.Y. Crim Proc. Law § 450.10(1). Defendant's assigned counsel filed a brief in support of defendant's appeal in which he raised the following claims:

> 1. The hearing court improperly denied defendant's motion to suppress the statements that defendant had given to the police;
>
> 2. The trial court's denials of defendant's and codefendant's *Batson* motions were erroneous;
>
> 3. The trial court incorrectly curtailed defense counsel's cross-examination of a prosecution witness, and the prosecutor made improper summation comments;
>
> 4. The trial court erred in admitting into evidence defendant's videotaped statement because the jury allegedly could not understand portions of the videotape;
>
> 5. Defendant's sentence was harsh and excessive; and
>
> 6. The verdict was repugnant.

Defendant filed a *pro se* supplemental brief in support of his direct appeal in which he also challenged the hearing court's denial of his motion to suppress his statements, the trial court's admission of his allegedly unintelligible videotaped statement, and the propriety of his sentence.

By decision and order dated December 11, 2000, the Appellate Division unanimously affirmed defendant's judgment of conviction. *People v. Bush*, 278 A.D.2d 334, 717 N.Y.S.2d 310 (2d Dep't 2000). The Appellate Division held that defendant's statements to the police were properly admitted because the statements were voluntarily given. *Id.* The Appellate Division further held that the court's rulings during the jury selection were incorrect, that the verdict was not repugnant, and that defendant's sentence was appropriate. *Id.* Finally, the Appellate Division held that defendant's remaining claims were either unpreserved for Appellate review or meritless. *Id.*

Defendant applied for permission to appeal from the Appellate Division to the New York Court of Appeals. *See* N.Y. Crim Proc. Law §§ 450.90, 460.20. By certificate dated February 5, 2001, the Court of Appeals denied defendant permission to appeal further. *People v. Bush*, 96 N.Y.2d 757, 725 N.Y.S.2d 283 (2001).

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

3

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v.*

4

*Walker*, No. 01-2299, 2002 U.S. App. LEXIS 28137 (2d Cir. Aug. 1, 2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Berbary v. Torres*, No. 02-2463, 2003 U.S. App. LEXIS 16167, at *25 (2d Cir. Aug. 7, 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Limitations Period

Congress has set a one-year period of limitations for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). A conviction becomes final for habeas purposes when the ninety-day period for filing a petition for a writ of certiorari to the United States Supreme Court has expired. *See McKinney v. Artuz*, No. 01-2739, 2003 U.S. App. LEXIS 6745, at *22 (2d Cir. 2003); *see also* Sup. Ct. R. 13.

Prisoners whose convictions became final before the effective date of AEDPA, April 24, 1996, had a grace period of one year, until April 24, 1997, to file their habeas application. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998).

"[T]he district court has the authority to raise a petitioner's apparent failure to comply

5

with the AEDPA statute of limitation on its own motion." *Acosta v. Artuz*, 221 F.3d 117, 121
(2d Cir. 2000). "If the court chooses to raise sua sponte the affirmative defense of failure to
comply with the AEDPA statute of limitation, however, the court must provide the petitioner
with notice and an opportunity to be heard before dismissing on such ground." *Id.*

 In calculating the one-year limitation period, the "time during which a properly filed
application for State post-conviction or other collateral review with respect to the pertinent
judgment or claim is pending shall not be counted . . . ." 28 U.S.C. § 2244(d)(2). The "filing of
creative, unrecognized motions for leave to appeal" does not toll the statute of limitations.
*Adeline v. Stinson*, 206 F.3d 249, 253 (2d Cir. 2000); *see also Artuz v. Bennett*, 531 U.S. 4, 8
(2000) ("[A]n application is *'properly* filed' when its delivery and acceptance are in compliance
with the applicable laws and rules governing filings. These usually prescribe, for example, the
form of the document, the time limits upon its delivery, the court and office in which it must be
lodged, and the requisite filing fee. . . . The question whether an application has been 'properly
filed' is quite separate from the question whether the claims contained in the application are
meritorious and free of procedural bar." (emphasis in original; footnote omitted)).

 The term "pending" in the statute has been construed broadly to encompass all the time
during which a state prisoner attempts, through proper use of state procedures, to exhaust state
court remedies with regard to a particular post-conviction application. *See Bennett v. Artuz*, 199
F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000). "[A] state-court petition is 'pending'
from the time it is first filed until finally disposed of and further appellate review is unavailable
under the particular state's procedures." *Bennett*, 199 F.3d at 120; *Carey v. Saffold*, 536 U.S. 214
(2002) (holding that the term "pending" includes the intervals between a lower court decision and

6

a filing in a higher court for motions for collateral review). A motion for extension of time to file an appeal does not toll AEDPA's limitations period unless an extension is actually granted. *See Bertha v. Girdich*, 293 F.3d 577, 579 (2d Cir. 2002).

The period of limitations set forth in AEDPA ordinarily does not violate the Suspension Clause. *See Muniz v. United States*, 236 F.3d 122, 128 (2d Cir. 2001) ("[T]he Suspension Clause does not always require that a first federal petition be decided on the merits  and not barred procedurally" (quotation omitted)); *Rodriguez v. Artuz*, 990 F. Supp. 275, 283 (S.D.N.Y. 1998) (AEDPA statute of limitations is not, "at least in general," an unconstitutional suspension of the writ).

A pro se litigant is accorded "some degree of latitude" in meeting filing requirements. *Brown v. Superintendent*, 1998 U.S. Dist. LEXIS 1936, No. 97 Civ. 3303, 1998 WL 75686, at *4 (S.D.N.Y. Feb. 23, 1998). But "[it] has long been recognized that ignorance does not excuse lack of compliance with the law." *Velasquez v. United States*, 4 F. Supp. 2d 331, 334–35 (S.D.N.Y. 1998) (holding that Bureau of Prison's failure to notify prisoners regarding AEDPA's time limitation did not warrant acceptance of untimely petition); *see also Brown*, 1998 WL 75686 at *4 ("self-serving statement that the litigant is ignorant of the law is not grounds for equitable tolling of a statute of limitations").

The Supreme Court held in *Duncan v. Walker* that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)," and that therefore the section does "not toll the limitation period during the pendency of [a petitioner's] first federal habeas petition." 533 U.S. 167, 181–82 (2001). *Duncan* reversed a case in this circuit which held to the contrary. *See*

7

*Walker v. Artuz*, 208 F.3d 357, 361–62 (2000). Although the Supreme Court has now declared that AEDPA's one-year limitations period is not tolled during the pendency of a properly filed federal habeas petition, this statute of limitations is not jurisdictional and may be tolled equitably. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "Equitable tolling . . . is only appropriate in 'rare and exceptional circumstances.' To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001).

Although state prisoners are not entitled to counsel as of right in either New York state collateral or federal habeas corpus proceedings, the Court of Appeals for the Second Circuit has stated that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA." *Baldayaque v. United States*, No. 02-2611, 2003 U.S. App. LEXIS 15063, at *17 (2d Cir. July 30, 2003); *compare Smaldone*, 273 F.3d at 138–39 (attorney calculation error does not justify equitable tolling).

Prisoners cannot circumvent the strict AEDPA limitations period by invoking the "relation back" doctrine by arguing that a new petition should be treated as having been filed on the same day as a first petition. As the court of appeals has explained,

> If [the limitations period] were interpreted as Petitioner argues, the result would
> be impractical. A habeas petitioner could file a non-exhausted application in
> federal court within the limitations period and suffer a dismissal without
> prejudice. He could then wait decades to exhaust his state court remedies and

8

could also wait decades after exhausting his state remedies before returning to

federal court to "continue" his federal remedy, without running afoul of the statute

of limitations.

*Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000) (quoting *Graham v. Johnson*, 158 F.3d 762,

780 (5th Cir. 1999)).

IV. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner

did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455

U.S. 509, 522 (1989). "This exhaustion requirement is . . . grounded in principles of comity; in a

federal system, the States should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731

(1991). The exhaustion requirement requires the petitioner to have presented to the state court

"both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney*

*General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas

petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C.

§ 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be

deemed to have waived the exhaustion requirement or be estopped from reliance upon the

requirement unless the State, through counsel, expressly waives the requirement." *Id.* §

9

2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 U.S. Dist. LEXIS 101, at *10

(S.D.N.Y. 2000) (state's failure to raise exhaustion requirement does not waive the issue).

V. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims

were defaulted in state court pursuant to an independent and adequate state procedural rule,

"unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In determining whether a

procedural bar is sufficient to preclude habeas review, a federal court must consider as

"guideposts" the following:

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve a
> legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee v. Kemna*, 534 U.S. 362 (2002)).

If a state court holding contains a plain statement that a claim is procedurally barred then

the federal habeas court may not review it, even if the state court also rejected the claim on the

merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need

not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly

invokes a state procedural rule as a separate basis for its decision).

When a state court says that a claim is "not preserved for appellate review" and then rules

"in any event" on the merits, such a claim is not preserved. *See Glenn v. Bartlett*, 98 F.3d 721,

10

724–25 (2d Cir. 1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion*, No. 02-2683, 2003 U.S. App. LEXIS 13949 at *15 n.3 (2d Cir. July 11, 2003) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003)). This congeries of holdings leaves it an open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

VI. Actual Innocence

"[A] habeas petitioner may also bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002).

Because habeas corpus "is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), the Supreme Court has stated that "in appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration," *id.* at 320–21 (quotations omitted). To ensure that this exception remains rare and will be applied only in the extraordinary case, the Court has "explicitly tied" the miscarriage of justice exception to the petitioner's innocence. *Id.* at 321.

11

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324.

A showing of actual innocence serves merely as a gateway to the airing of the petitioner's defaulted claim and is not itself cognizable in habeas as a free-standing claim. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). A habeas court is, in short, concerned "'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'" *Id.* (quoting *Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923)); *cf. Jackson v. Virginia*, 443 U.S. 307 (1979) (habeas court may review an *independent constitutional claim* that the evidence adduced at trial was insufficient to convict a criminal defendant beyond a reasonable doubt); *Thompson v. Louisville*, 362 U.S. 199 (1960) (reversing conviction of "Shuffling Sam" *on direct review* from conviction in Louisville's police court where there was no evidence that defendant violated city ordinances).

VII.  Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that

12

therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Wiggins v. Smith*, 539 U.S. __, No. 02-311, slip op. at 8–10 (June 26, 2003); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, No. 02-7468, 2003 U.S. App. LEXIS 2053, at *18 (2d Cir. Feb. 6, 2003) (quoting *Strickland*, 466 U.S. at 694). Ineffective assistance may be

13

demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland*'s prejudice prong. *See Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir. 2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt*, 239 F.3d at 201 (same). The court of appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze*, 2003 U.S. App. LEXIS 2511, at *78–*79 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for . . . counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Each factual claim made in support of an allegation of ineffective assistance of counsel

14

must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994). Each significant factual claim in support of an ineffective-assistance allegation premised on appellate counsel's deficient performance must be exhausted. *See Word v. Lord*, No. 00 CIV. 5510, 2002 U.S. Dist. LEXIS 19923, at *34-*35 (S.D.N.Y. Mar. 18, 2002) (Magistrate's Report and Recommendation).

Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Either a federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state . . . claim fell outside the wide range of professionally competent assistance." *Id.* (quotations

15

omitted).

VIII. Errors of State Law

Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Nonetheless, the Due Process Clause requires that state courts conducting criminal trials "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Errors of state law that rise to the level of a constitutional violation may be corrected by a habeas court, but even an error of constitutional dimensions will merit habeas corpus relief only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quotation omitted).

IX. Evidentiary Error

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976). The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982). This test applies post-AEDPA. *See Wade v. Mantello*, No. 02-2359, slip op. at 13 (2d Cir. June 13, 2003).

X. Verdict Against the Weight of the Evidence

16

To the degree petitioner claims that his guilt was not proven beyond a reasonable doubt, the relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). To the degree petitioner claims the verdict was against the weight of the evidence, such a claim does not present a federal constitutional issue.

XI. Legal Claims Frequently Raised in Habeas Corpus Applications

For an explication of the law concerning other claims that are frequently raised before this court in applications for a writ of habeas corpus, *see Waters v. McGuiness*, 99-CV-0615, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11077, at *4–*5 (E.D.N.Y. June 16, 2003) (grand jury claims); *Custodio v. Duncans*, Nos. 99-CV-2561, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11050, at *4–*7 (E.D.N.Y. June 11, 2003) (*Batson* challenges); *Reyes v. Irwin*, 99-CV-3758, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11045, at *5–*6 (E.D.N.Y. June 20, 2003) (*Wade* claims); *Brathwaite v. Duncan*, 00-CV-0860, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11056, at *4–*5 (E.D.N.Y. June 10, 2003) (*Sandoval* claims); *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 108–09 (E.D.N.Y. 2003) (perjured testimony); *Martinez v. Greiner*, 99-CV-4663, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11046, at *7 (E.D.N.Y. June 20, 2003) (Fourth Amendment claims); *Plunkett v. Keane*, 97-CV-1992, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11048, at *8–*9 (E.D.N.Y. June 10, 2003) (*Rosario* claims); *Beniquez v. Bennett*, 00-CV-0985, 03-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11032, at *15–*16

17

(E.D.N.Y. June 16, 2003) (prosecutorial misconduct); *Sevencan v. Herbert*, No. 01-2491, slip

op. at 6–13 (2d Cir. Aug. 7, 2003) (public trial); *Cox v. Donnelly*, 99-CV-8216, 03-MISC-0066

(JBW), 2003 U.S. Dist. LEXIS 9886, at *12–*14 (E.D.N.Y. June 12 2003) (shifting burden of

proof); *Jelinek v. Costello*, 247 F. Supp. 2d 212, 266–67 (E.D.N.Y. 2003) (right to self-

representation); *Stewart v. Senkowski*, 00-CV-0806, 03-MISC-0066 (JBW), 2003 U.S. Dist.

LEXIS 11028, at *6 (E.D.N.Y. June 16, 2003) (erroneous jury instructions); *Jenkins v. Artuz*,

98-CV-7837, 00-MISC-0066 (JBW), 2003 U.S. Dist. LEXIS 11049, at *7–*8 (E.D.N.Y. June 13,

2003) (abuse of discretion in sentencing);

## XII. Harmless Error

In order to be entitled to habeas relief, a petitioner must ordinarily demonstrate that any

constitutional error "had substantial and injurious effect or influence in determining the jury's

verdict," and that the error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619,

637 (1993) (quotation marks omitted).

When a claim was never adjudicated on the merits in the state courts and there is no

ruling which commands AEDPA deference, it is unclear what the standard for review for

harmlessness should be in a collateral attack when a federal court finds constitutional error.

Should it proceed under the "beyond a reasonable doubt" standard of *Chapman v. California*, 386

U.S. 18 (1967) (conviction infected by constitutional error must be overturned unless "harmless

beyond a reasonable doubt") or under the "substantial and injurious effect or influence" standard

of *Brecht* (for cases on collateral review, an error is generally considered harmless if it did not

have a "substantial and injurious effect or influence in determining the jury's verdict")? The

correct standard of review is an open question in this circuit. *See Cotto v. Herbert*, No. 01-2694,

18

2003 U.S. App. LEXIS 8326, at *92 (2d Cir. May 1, 2003).

XIII.  Analysis of Claims

A.

The trial court correctly denied defendant's and co-defendant Flournoy's *Batson* motions.

Defendant had failed to allege a prima facie case of discrimination. The prosecutor provided

race-neutral, non-pretextual reasons for his challenges.

The New York State and Federal Constitutions prohibit both the prosecution and defense

from exercising peremptory challenges in a racially discriminatory manner. *Georgia v.*

*McCollum*, 505 U.S. 42 (1992); *Batson v. Kentucky*, 476 U.S. 79 (1986); *People v. Kern*, 75

N.Y.2d 638, 555 N.Y.S.2d 647 (1990).  The determination of whether a party has exercised

peremptory challenges in a discriminatory manner entails a three-step process.  First, the moving

party must make a prima facie showing of discrimination by his or her adversary.  Second, if that

showing has been made, then the adversary must set forth a race-neutral explanation for striking

each of the jurors at issue.  Finally, assuming that the explanations proffered are facially race-

neutral, then the court must determine if those reasons are pretextual. *People v. Allen*, 86 N.Y.2d

101, 104, 629 N.Y.S.2d 1003, 1005 (1995).

Once the trial court finds that the moving party has made a prima facie showing of racial

discrimination in the jury selection, the burden shifts to the opposing party to articulate a race-

neutral explanation for striking each of the venirepersons at issue. *Hernandez v. New York*, 500

U.S. 352, 358-59 (1991); *Batson v. Kentucky*, 476 U.S. at 97.  That burden is not an onerous one.

The explanation need not be persuasive or even plausible, so long as, on its face, the explanation

is one that could apply to people of any race, then the explanation is race-neutral and the party

19

opposing the *Batson* motion has met its burden. *Purket v. Elem*, 514 U.S. 765, 767 (1995).

If the trial court concludes, at the second step of the inquiry, that the proffered explanation is race-neutral, the inquiry moves to step three: The question of whether the facially neutral reason is genuine or merely a pretext for discrimination. Step three permits the trial court to resolve factual disputes.

As an issue of fact which necessarily turns largely upon a court's contemporaneous evaluation of the credibility of the party making the peremptory challenge, a court's finding that the explanation offered for a challenge was, or was not, a mere pretext must be accorded great deference on appeal. *Hernandez v. New York*, 500 U.S. at 364; *Batson v. Kentucky*, 476 U.S. at 98 n. 21. Only if the record establishes that the court committed "clear error" in seating a juror over a party's objection may an appellate court substitute its own finding. *Hernandez v. New York*, 500 U.S. at 364-65.

At the end of the first round of the *voir dire*, the prosecutor used his peremptory challenges to strike five potential jurors. Defense counsel made a *Batson* challenge, noting that three of the five challenged jurors were African-American. The prosecutor argued that defense counsel had failed to establish a prima facie case of discrimination because there was no pattern of racial discrimination. The prosecutor reminded the court that he had not challenged two African-American panelists, and that, in fact, one of the two had been chosen to sit on the jury. The court ruled that striking three potential jurors of the same race, by itself, did not amount to a prima facie case of discrimination.

At the end of the second round of *voir dire*, the prosecutor used his peremptory challenges to strike three potential African-American jurors. Co-defendant Flournoy's counsel

20

made a *Batson* challenge, arguing that the prosecutor was engaging in a pattern of racial
discrimination. The prosecutor argued that the defense had not made out a prima facie case, but
that he was prepared to state his reasons for his challenges. The court indicated that it was
inclined to agree that the defense had not made out a prima facie case, but it directed the
prosecutor to state the reasons for his challenges.

The prosecutor explained that he challenged potential juror number four because she had
nephews who had recently been convicted of felony crimes, potential juror number seven
because he also had relatives who were convicted of crimes and he had stated that he did not trust
the police, and potential juror number seventeen because she was wearing a nose ring, and, in the
prosecutor's opinion, that represented a negative attitude toward authority. The prosecutor added
that he also challenged potential juror number seventeen because her grandmother lived on the
street where the shooting occurred, and one of the People's witnesses, Ronald Ashby, used to
"frequent" the area.

The court denied the defense's *Batson* challenge. The court held that the prosecutor's
reasons were not pretextual. The court noted that three potential jurors selected to sit on the jury
during the second round of *voir dire* were African-American.

The court's rulings provide no basis to grant defendant habeas relief. Defendant's claim
regarding the trial court's denials of his *Batson* motions are identical to the ones that he had
raised in the Appellate Division. The Appellate Division rejection of the claims was not contrary
to, and did not involve an unreasonable application of, federal law, as determined by precedent of
the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Reference must be made to a
"multi-factor analysis." *Tankleff v. Senkowski*, 135 F.3d 235, 249 (2d Cir. 1998).

21

A trial judge has "broad latitude to consider the totality of the circumstances when determining whether a defendant has raised an inference of discrimination." *United States v. Stavroulakis*, 952 F.2d 686, 696 (2d Cir. 1992); *see also Barnes v. Anderson*, 202 F.3d 150, 155 (2d Cir. 1999). In making its determination, a trial court should consider how many members of the cognizable racial group are in the pool of prospective jurors, the pattern of strikes against the racial group in a particular pool, the prosecutor's statements and questions during the selection process, as well as any other relevant circumstances. *Tankleff v. Senkowski*, 135 F.3d at 249.

The determination of the Appellate Division and the trial court that the prosecutor's explanations were not pretextual is a factual finding which is presumed correct. *See* 28 U.S. C. § 2254(d)(2), (e)(1); *see also Hernandez v. New York*, 500 U.S. at 364; *Bryant v. Speckard*, 131 F.3d 1076 (2d Cir. 1997) (state court's finding that prosecutor did not strike prospective jurors because of race was entitled to presumption of correctness under former *habeas* statute). A *habeas* petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

As the trial court noted, the make-up of the jury belied a finding that the prosecutor's reasons were pretextual. At the end of the second round of *voir dire*, three African-American venirepersons were excused on consent, and the prosecutor struck three of the remaining six African-American jurors for reasonable non-racial reasons.. Those African-American jurors who were not challenged were ultimately selected to sit on the jury.

This claim has no merit.

B.

Defendant claims that his statements to the police and the district attorney should have

22

been suppressed because the People had failed to prove that the statements were voluntarily given. Defendant's claim is meritless.

Whether a confession is voluntary depends on the "totality of surrounding circumstances." *Green v. Scully*, 850 F.2d 894, 901 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988). In applying this test, a court must take into consideration the confessor's experience and background, the conditions of the interrogation, and the conduct of the police. *Id.* At 902.

Defendant made knowing, voluntary, and intelligent waivers of his *Miranda* rights before he gave his statements to the police and the district attorney. Defendant was arrested at 3:00 p.m., and was placed, without handcuffs, in an interview room inside the 79th precinct station house. Defendant was offered food, beverages, and the use of the bathroom facilities and a telephone. He used the telephone to call his brother and girlfriend. During the seven-hour interval between his arrest and the reading of his *Miranda* warnings, Detectives Salley and Guzman entered the interview room intermittently, approximately three to four times, and asked defendant about the shooting. Each time, defendant denied having any knowledge of the shooting.

After conducting one genuine lineup and several fake lineups designed to give defendant the impression that witnesses had recognized him from the night of the shooting, defendant was read his *Miranda* warnings. Defendant then gave what he believed was an exculpatory statement. Defendant stated that he had been present on the night of the shooting, and had pointed a gun at the victim, but the gun had not fired because it had jammed. Defendant also said that the victim had been involved in an earlier incident in which defendant had been shot.

Five hours later, after a second reading of his *Miranda* warnings, defendant gave a

videotaped statement to an assistant district attorney in which he repeated his account of the shooting.

Defendant's claims that his statements should have been suppressed because he had invoked his right to remain silent is not supported by the hearing record. Contrary to defendant's assertion, defendant did not invoke his right to remain silent when he was first approached at the precinct station house by Detective Salley. Even though Detective Salley first testified at the *Huntley* hearing that defendant had initially said, "I have nothing to say, nothing" (Salley: 22), the detective later corrected himself. When asked about his initial interview with defendant, Detective Salley testified that, in fact, he could not recall defendant's exact words, but that defendant was "more or less saying I wasn't there" (Salley: 24).

The use by the police of deception to make defendant believe that witnesses had recognized him from the night of the shooting does not render defendant's oral statement involuntary. The fact that the police lie to a suspect for the purpose of eliciting a confession does not necessarily render the confession involuntary. *Green v. Scully*, 850 F.2d at 894; *see also Colorado v. Spring*, 479 U.S. 564 (1987) (declining to outlaw police trickery during the questioning of a suspect).

The deception used by the police did not violate petitioner's rights. By conducting several staged lineups, the detectives sought to impress upon defendant that, because the crime had occurred on a busy street corner at 7:00 p.m, defendant's involvement in the shooting had not gone unnoticed. This tactic was arguably reasonable, and did not deny defendant his due process rights.

Any error was harmless because defendant's second, videotaped statement, which was

24

essentially duplicative of his first statement, was admissible. Evidence may be admitted at trial if the causal connection between it and the unlawful conduct is so attenuated that the taint of the initial misconduct has dissipated. *See generally Wong Sun v. United States*, 371 U.S. 471 (1963).

A statement made by a defendant following a definite, pronounced break in interrogation by the police, and preceded by *Miranda* warnings, is ordinarily admissible despite the fact that it followed a prior, inadmissible statement. The rationale for this rule is that if the subsequent statement is not the product of a single, continuous chain of events, then there is a sufficient attenuation of possible taint. *See Oregon v. Elstad*, 470 U.S. 298, 300 (1985).

Defendant's first statement to Detective Salley at 10:00 p.m., and his second statement to an assistant district attorney at 3:00 a.m. the following day were not the product of a single continuous chain of events. The second statement was preceded by a re-reading of defendant's *Miranda* warnings; it was removed in time and circumstance from the first statement. *See Tankleff v. Senkowski*, 135 F.3d at 244-46 (*habeas* relief not warranted where there was no coercion, and *Miranda* warnings preceded statement that followed prior inadmissible statement.

This claim has no merit.

C.

Defendant claims that he was unable to effectively impeach Ronald Ashby, a prosecution witness, because the trial court improperly precluded him from eliciting from Ashby the details of a prior shooting in which Ashby and his wife were shot by co-defendant Flournoy. The trial court's decision limiting defense counsel's cross-examination was arguably a proper exercise of its discretion.

Under state law, a trial court is permitted wide latitude in ruling on the scope of cross-

25

examination and its ruling is not to be disturbed on appeal absent abuse of discretion. *See People v. Schwartzman*, 24 N.Y.2d 241, 244, 299 N.Y.S.2d 817, *cert. denied*, 396 U.S. 846 (1969); *People v. Sorge*, 310 N.Y. 198 (1950). The court is entitled to control the extent of cross-examination, and may also restrict inquiry into collateral matters. *See People v. Ramistella*, 306 N.Y. 379, 384 (1954).

Under federal law, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to expose defects in the testimony of the witness, but does not necessarily entitle a defendant to a cross-examination that is "effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Generally, erroneous evidentiary rulings of a state trial court do not rise to the level of a constitutional deprivation upon which a write of *habeas corpus* may be issued.

The trial court did not err when it limited the scope of defendant's cross-examination of Ronald Ashby. Over co-defendant Flournoy's objection, defense counsel asked the court for permission to question Ashby about a prior shooting in which Ashby and his wife were shot by co-defendant Flournoy. Defense counsel argued that even though defendant was not involved in this shooting, his mere association with the co-defendant created an inference that Ashby was hostile toward defendant (66-68, 82-84). The court denied defendant's application. The court held that evidence of this prior crime was prejudicial to co-defendant Flournoy, and that, because only co-defendant Flournoy had been accused of shooting Ashby, it had no relevance to any alleged bias Ashby might have had toward defendant (85-86).

During cross-examination, defense counsel disregarded the court's ruling and asked Ashby about the incident in which he and his wife were shot. Counsel asked who committed the

26

shooting, and Ashby replied, "Michael [co-defendant] and Bad [one of co-defendant's friends]"
(599). Co-defendant Flournoy objected, and, after a sidebar discussion (599-607), the court
sustained the objection and instructed the jury to disregard the question and answer (607).
Defense counsel then asked Ashby if he "dislike[d]" defendant. Ashby responded, "Yes" (609-
10).

The court's decision to preclude defense counsel from asking about co-defendant
Flournoy's prior crimes against Ashby was arguably a proper exercise of its discretion.

Any error in the court's ruling regarding defense counsel's cross-examination of Ronald
Ashby was harmless. A federal court may issue a writ of *habeas corpus* on the basis of a state
trial error only if the error was so egregious that it "had a substantial and injurious effect or
influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).
Here, defendant was not prejudiced by the court's ruling. Defendant claims that the ruling
prevented him from discrediting Ashby's testimony. In fact, the jury ultimately rejected the
murder charge, which was based solely on Ashby's testimony. Defendant was convicted of only
weapon possession – a crime to which he admitted in his oral and videotaped statements. Thus,
there is no significant probability that, but for the alleged error in the court's evidentiary ruling,
the verdict would have been different.

XIV. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted. Petitioner made no substantial showing of the
possible denial of a constitutional right. He may, as already indicated, seek a certificate of
appealability from the Court of Appeals for the Second Circuit.

27

SO ORDERED.

Jack B. Weinstein
Senior District Judge

Dated:    October 29, 2003
          Brooklyn, NY